**UNIMED, INC., and Theodor Petrzilka, Plaintiffs,**

v.

**Donald J. QUIGG, Commissioner of Patents and Trademarks, Defendant.**

**Civ. A. No. 88–2480.**

United States District Court, District of Columbia.

Feb. 28, 1989.

Irene Knable Gotts, Foley & Lardner, Washington, D.C., Harold D. Steinberg, Steinberg & Raskin, New York City, Martin W. Schiffmiller, Kirschstein, Kirschstein, Ottinger & Israel, New York City, for plaintiffs.

Fred E. McKelvey and Charles E. Van Horn, Office of the Solicitor, Arlington, Va., for defendant.

## MEMORANDUM AND ORDER

REVERCOMB, District Judge.

This case concerns the interpretation of the Drug Price Competition and Patent Term Restoration Act, 35 U.S.C. § 156. The plaintiffs seek review of the defendant's denial of an application for extension of a patent term, and have moved for partial summary judgment. The defendant has filed a cross-motion for summary judgment.

The legal question raised by this case is whether the plaintiff's patent extension application was timely submitted. The Patent and Trademark Office ("PTO") has held that it was not, and has denied the plain-

tiff's application for an extension of patent term on that basis.

The statute provides that the term of a patent "shall be extended" if

(1) the term of the patent has not expired before an application is submitted under subsection (d) for its extension;

(2) the term of the patent has never been extended;

(3) an application for extension is submitted by the owner of record of the patent or its agent and in accordance with the requirements of subsection (d);

(4) the product has been subject to a regulatory review period before its commercial marketing or use;

(5) (A) ... the permission for the commerical marketing or use of the product after such regulatory review period is the first permitted commercial marketing or use of the product under the provision of law under which such regulatory review period occurred[.]

Subsection (d), to which reference is made in the excerpted sections above, provides in relevant part that

[t]o obtain an extension of the term of a patent under this section, the owner of record of the patent or its agent shall submit an application to the Commissioner. Such an application may only be submitted within the 60–day period beginning on the date the product received permission under the provision of law under which the applicable regulatory review period occurred for commercial marketing or use.

The outcome of this case depends on whether the plaintiff applied for an extension of the term of his patent within the sixty-day period described in Subsection (d).

The plaintiff submitted a New Drug Application ("NDA") to the Food and Drug Administration ("FDA") on September 23, 1982. The NDA was for a drug, using "Marinol" as a trade name, its generic name being dronabinol, which is covered by the claims of the plaintiff's patent, United States Patent No. 3,668,224.[1] The NDA

---

1. The plaintiff Unimed, Inc., is the exclusive licensee under this patent, and is empowered by

plaintiff Petrzilka to bring suit with respect to

was approved by the FDA on May 31, 1985.[2] The approval letter, in addition to informing the plaintiff that Marinol met the FDA's standards of safety and efficacy, stated that Marinol could not be marketed legally until the Drug Enforcement Agency ("DEA") had "completed rescheduling activities as required by the Controlled Substances Act." As of the date of the NDA approval letter, Marinol was classified as a Schedule I drug by the DEA, a classification which prohibits commercial marketing in any form. The FDA's letter, therefore, indicated to the plaintiffs that the drug could not be marketed legally until it had been rescheduled by the DEA.

Marinol was rescheduled by the DEA on May 13, 1986. Nearly a year, then, had passed between the time the NDA was approved by the FDA and the rescheduling by the DEA which allowed Marinol to be marketed. Within fourteen days after the rescheduling, the plaintiff submitted an application to the PTO for an extension of the term of the patent. The only dispute before the Court regarding this application is whether it was timely filed.

On March 23, 1987, the PTO issued a decision denying the plaintiff's application for patent term extension on the ground that the application was not timely under 35 U.S.C. § 156(a)(3) and (d)(1). In its decision, the PTO took the position that the plaintiff's application should have been filed within sixty days after the FDA had approved the NDA on May 31, 1985, rather than within sixty days after the DEA's rescheduling in May, 1986. The plaintiff requested reconsideration of this decision on May 7, 1987, and the request was denied by the defendant in June, 1988. This lawsuit followed. The plaintiff has requested, in its present motion, that the Court set aside the PTO's denial of the extension application, remand the application to the PTO for consideration on its merits, and order the PTO to grant an interim extension, pursuant to 35 U.S.C. § 156(e)(2),

pending a final decision on the merits of the application.

The gist of the plaintiff's argument is that it is unfair to require it to apply for a patent term extension within 60 days of the time the FDA approved the Marinol NDA, when the product couldn't be marketed for another year due to the DEA's pending rescheduling action. This argument is consistent with Congress' purposes in enacting the Patent Term Restoration Act.

A major purpose of 35 U.S.C. § 156 is to allow patent holders to extend the time during which their products are protected by the patent laws, so that manufacturers can redeem, through monopolistic profits, the investment they made in the research, development and regulatory approval stages of the product's history. The legislative history of the Act reveals that it was intended to "correc[t] the anomaly under which the government grants a 17–year term of patent protection, but prohibits the patented product from being marketed while the patent life ticks away." S.Rep. No. 97–138, 97th Cong., 1st Sess. 2 (1981).

The plaintiff states that the application was made after DEA rescheduling in accordance with a good faith belief that the sixty-day application period was triggered by the final regulatory approval which allowed Marinol to be marketed.

In its cross-motion for summary judgment, the defendant points out that the statute, which states in Subsection (d) that the date at which the sixty-day application period begins is "... the date the product received permission under the provision of law under which the applicable regulatory review period occurred for commercial marketing or use[,]" also provides a definition for "regulatory review period" which the PTO has construed to mean *only* the period during which the patent is under review by the FDA, and even then *only* under the specific statutory provisions listed in the

---

this patent in its own name or jointly with Petrzilka.

**2.** Approval of an NDA requires a finding by the FDA that adequate information has been

presented to demonstrate that the drug is safe and effective for use as recommended in the submitted labeling.

Act. Section 156(g)(1) of the Act states that

> [t]he regulatory review period for a human drug product is the sum of—(i) the period beginning on the date an exemption under subsection (i) of section 505 or subsection (d) of section 507 became effective for the approved human drug product and ending on the date an application was initially submitted for such drug product under section 351, 505, or 507, and (ii) the period beginning on the date the application was initially submitted for the approved human drug product under section 351, subsection (b) of section 505, or section 507 and *ending on the date such application was approved under such section* (emphasis added).

Section 505 of the Food, Drug and Cosmetic Act, 21 U.S.C. § 355, is the provision under which Marinol was reviewed by the FDA. The defendant argues that review under Section 505, leading to a finding by FDA that the drug is safe and efficacious, is the point at which the 60–day application period began to run. Since § 156(g) states that the regulatory review period applicable to Marinol ends on the date the new drug application is approved under § 505 [3], and this approval is solely within the jurisdiction of the FDA, the FDA itself considers the date of marketing approval for NDAs to be the date appearing on its approval letters. Therefore, the defendant argues, since the plaintiff failed to apply for its patent term extension within sixty days of the FDA's approval date, it has failed to apply within sixty days of the completion of the "regulatory review period."

The plaintiff responds that regulatory review of Marinol occurred under *both* the FDA's NDA process and DEA rescheduling under 21 U.S.C. § 811. The problem with this argument is that § 156(g) does not provide for review under 21 U.S.C. § 811 as part of the definition of "regulatory review period." Accordingly, the de-

fendant contends that the statute does not give the PTO or the FDA authority to consider regulatory delays other than those experienced in the regulatory review process before the FDA. The defendant's position is that the actual date at which the product is available for commercial marketing is irrelevant to the tolling of the 60–day period, while the product could be held up indefinitely by other regulators. This would make the benefits conferred on manufacturers by the Act vary depending on whether other regulatory hurdles had to be overcome before marketing. The plaintiff argues that the relevant date should be the date that commercial marketing of the product is *actually permitted.*

On two occasions, courts have considered similar issues, and have decided that the date of the NDA approval letter is the date of "approval" for purposes of determining how long patent protection lasts. *Mead Johnson Pharmaceutical Group v. Bowen,* 838 F.2d 1332 (D.C.Cir.1988); *Norwich Eaton Pharmaceuticals, Inc. v. Bowen,* 808 F.2d 486 (6th Cir.1987). In both cases, however, the regulatory approval date at issue was the last *governmental* barrier to marketing. Although the products in those cases could not be marketed immediately upon the completion of FDA's regulatory review, the burden of satisfying the remaining administrative requirements prior to marketing was on the manufacturers. The manufacturer in *Norwich Eaton* was charged with compliance with labeling requirements. As soon as it complied, it could market the product. In effect, on the date FDA approved the NDA, the government had set all the conditions for marketing that it was going to set; the remaining obligations were all within the control of the manufacturer. A similar situation obtained in *Mead Johnson,* although in that case the issue was whether the date of approval had come at the right time to afford the manufacturer the protection of the Patent Term Restoration Act. There as well, the Court of Appeals upheld the FDA's interpretation of the statute that the

---

**3.** Strictly speaking, the sixty-day application period would be triggered, on the defendant's view, by regulatory approval under any of the

named provisions listed in § 156(g). In this case, however, § 505 is the only section at issue.

date of "approval" was the date on which the FDA wrote its approval letter. But in *Mead Johnson,* as in *Norwich Eaton,* the date of "approval" was literally a date of *approval* in the sense that after the FDA had completed its review, the burden was on the manufacturer to comply with the labeling requirements FDA had imposed. No further barriers to marketing existed, nothing outside the manufacturer's control was left to be done. As the Court observed in *Mead Johnson,* "neither Mead nor the FDA regarded the submission of such labeling as a precondition to 'approval'." 838 F.2d at 1336.

In the present case, however, the FDA's approval of the Marinol NDA was *not* the final regulatory barrier to marketing. The NDA approval letter informed the plaintiff that it could not market Marinol until the DEA had rescheduled it. Clearly, FDA regarded DEA rescheduling as a precondition to *marketing,* even if it had completed its own task of review. To ignore the existence of a further road-block to marketing would fail to give meaning to the clause "for commercial marketing or use" in the concluding sentence of Subsection (d): "[s]uch an application may only be submitted within the 60–day period beginning on the date the product received permission under the provision of law under which the applicable regulatory review period occurred for commercial marketing or use." While the statute states that the extension application must be submitted "within the 60–day period" following the conclusion of regulatory review, that period is not simply the "applicable regulatory review period." It is also the period "beginning on the date the product received permission ... for commercial marketing or use." By the terms of FDA's own approval letter, the NDA had not received "permission ... for commercial marketing or use" "under the provision of law under which the applicable regulatory review pe-

riod occurred," because the result of the regulatory review was not to allow the plaintiff to market the drug.[4] That permission awaited a further regulatory barrier in the shape of DEA review. Unlike in the cases cited above, the remaining steps prior to marketing were not left for the plaintiff to take. It would be contrary to the purpose of the Patent Term Restoration Act to start the clock ticking on the patent holder's right to apply for an extension during a period when the product could not be marketed.

Therefore, it is ORDERED that the defendant's denial of the plaintiff's extension application is set aside, and the application is remanded to the PTO for consideration on its merits. It is FURTHER ORDERED that the defendant shall grant an interim extension pending its final decision on the merits.

### ORDER

In accordance with the Memorandum and Order in this case dated February 28, 1989, judgment is entered for the Plaintiff.

SO ORDERED.

---

4. Alternatively, it could be said that the regulatory review period concluded by the FDA's approval letter was not the "applicable" review period, since the "applicable" period would be the one ending in "permission ... for commercial marketing or use." The plaintiff did not get final permission to market its product until the DEA had spoken, so the "applicable" period in this case is the review period before DEA, during which the plaintiff could not market Marinol.